UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x
UNITED STATES OF AMERICA,                      :
                                               :
                        *Plaintiff.*           :          13 CV 6521 (JS)
                                               :
          – against –                          :
                                               :
L. GEROD NADLER, individually and as           :
personal representative for the Estate of Joseph B. :
Nadler, deceased, MAXINE KARAS, individually   :
and as personal representative for the Estate of :
Joseph B. Nadler, deceased, and  LESLY FREED,  :
individually and as personal representative for the :
Estate of Joseph B. Nadler, deceased,          :
                                               :
                        *Defendants*.          :
                                               :
----------------------------------------------------------------x

DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO DISMISS THE COMPLAINT
OR, IN THE ALTERNATIVE,
<u>TO TRANSFER AND CONSOLIDATE</u>

THE WEINSTEIN LAW FIRM PLLC
800 Third Avenue, 18th Floor
New York, NY  10022
T. 212-582-8900

LAW OFFICE OF WILLIAM D. WEXLER
816 Deer Park Avenue
North Babylon, NY 11703
T. 631-422-2900

**TABLE OF CONTENTS**

Table of Authorities .................................................................................................. ii

PRELIMINARY STATEMENT ................................................................................ 1

INTRODUCTION ..................................................................................................... 1

SUMMARY OF RELEVANT FACTS ..................................................................... 3

STANDARD OF REVIEW ....................................................................................... 5

ARGUMENT ............................................................................................................. 6

I.      COUNT I FAILS TO STATE A VIABLE CLAIM PURSUANT TO
        31 U.S.C. § 3713 .......................................................................................... 6

II.     COUNT II IS PREMATURE AND MUST BE DISMISSED PURSUANT TO
        FED. R. CIV. P. 12(B)(1) ............................................................................. 9

III.    THE COURT SHOULD ABSTAIN FROM EXERCISING JURISDICTION
        OVER THIS ACTION PURSUANT TO THE *COLORADO RIVER* ABSTENTION
        DOCTRINE .................................................................................................. 11

        A.   The Pending Surrogate's Court Action and the Case at Bar are Parallel.................. 12

        B.   The Six Factors Weigh in Favor of Abstention ......................................... 14

IV.     THIS ACTION SHOULD BE DISMISSED OR, IN THE ALTERNATIVE,
        TRANSFERRED OR REMOVED TO THE SURROGATE'S COURT FOR
        CONSOLIDATION WITH THE PENDING SURROGATE'S COURT ACTION ....... 17

CONCLUSION......................................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................... 6

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................ 6

*Bull & Bear Group, Inc. v. Fuller*, 786 F. Supp. 388 (S.D.N.Y. 1992) ........................... 14, 15, 16

*City of New York v. Milhelm Attea & Bros, Inc*., 550 F. Supp. 2d 332
    (E.D.N.Y. 2008) ........................................................................................ 6

*Colorado River Water Conservation District v. United States*,
    424 U.S. 800 (1976) ............................................................................. 2, 6, 11, 12

*First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc*.,
    862 F. Supp. 2d 170 (E.D.N.Y. 2012) ................................................................ 15

*Jones v. Bock*, 549 U.S. 199 (2007) ......................................................................... 5

*Macer v. Bertucci's Corp*., No. 13–CV–2994, 2013 WL 6235607
    (E.D.N.Y. Dec. 3, 2013) ............................................................................... 4

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1 (1983) .......................... 14

*Pabco Const. Corp. v. Allegheny Millwork PBT,* No. 12 Civ. 7713,
    2013 WL 1499402 (S.D.N.Y. Apr. 10, 2013) ................................................ *passim*

*Schwartz v. Commissioner of Internal Revenue,* 560 F.2d 311 (8th Cir. 1977) ........................... 8, 9

*Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236 (2d Cir. 2002) ........................... 5

*Texas v. United States*, 523 U.S. 296 (1998) .............................................................. 11

*United States v. Blake*, 942 F. Supp. 2d 285 (E.D.N.Y. 2013) ........................................ 11, 13, 15

*United States v. Blumenfeld*, 128 B.R. 918 (E.D. Pa. 1991) ........................................... 7

*United States v. Dickerson,* 189 F. Supp. 2d 622 (W.D. Tex. 2001) ................................... 7

*United States v. Fabricated Air Products Co.*, 206 F.Supp. 228 (D.C.Tex. 1962) ....................... 7

ii

*United States v. Knott,* 298 U.S. 544 (1936) ..................................................................... 16, 18

*United States v. Lutz,* 295 F.2d 736 (5th Cir. 1961) ................................................................ 8

*United States v. Renda*, 709 F.3d 472 (5th Cir. 2013) ............................................................ 7

*United States v. State of Vt.*, 377 U.S. 351 (1964) ................................................................. 7

**State Cases**

*Bloomingdale v. Bloomingdale,* 258 A.D. 231, 16 N.Y.S.2d 359
     (1st Dep't 1939) ............................................................................................................. 19

*Estate of Bailey,* 147 Misc.2d 46, 554 N.Y.S.2d 791 (Surr. Ct. Bronx Co. 1990) ....................... 18

*Estate of King Faisal II,* 35 Misc.2d 412, 230 N.Y.S.2d 799
     (Surr. Ct. N.Y. Co. 1962) ..................................................................................... 17, 19-20

*In re Chusid,* 60 Misc. 2d 462, 301 N.Y.S.2d 766 (Kings Co. Sur. Ct. 1969) ............................ 18

*In re De Fontarce's Estate*, 66 N.Y.S.2d 808 (Surr. Ct. N.Y. Co. 1946) ............................... 18, 19

*In re Schmuckler's Estate,* 58 Misc.2d 418, 296 N.Y.S.2d 202
     (N.Y. Sur. Ct. 1968) ........................................................................................................ 18

*Marci v. Swiers,* 29 Misc.3d 212, 905 N.Y.S.2d 871 (Sup. Ct. Saratoga Co. 2010) ............. 19, 20

*Matter of Guardianship of Bowers,* 164 Misc.2d 298, 624 N.Y.S.2d 750
     (N.Y. Sur. Ct. 1995) ........................................................................................................ 18

*Mayer v. Goldhaber,* 63 Misc.2d 605, 313 N.Y.S.2d 87 (Sup. Ct. N.Y. Co. 1969) .................... 17

*Norton v. Marine Midland Trust Co. of Southern New York,* 72 A.D.2d 633,
     421 N.Y.S.2d 148 (3d Dep't 1979) .................................................................................... 20

**State Rules & Statutes**

N.Y. C.P.L.R. § 325(e) .............................................................................................. 19

N.Y. E.P.T.L § 12-1.1 ...................................................................................... 1, 5, 9, 10

Surr. Ct. Proc. Act § 2205 ............................................................................................. 4

Surr. Ct. Prac. Act § 201 ........................................................................... 14, 16, 17, 18

**Federal Rules & Statutes**

31 U.S.C. § 3713 ................................................................................................ *passim*

Fed. R. Civ. P. 12(b)(1) ........................................................................................ 1, 2, 9

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 1, 2, 5

**Treatises**

29 Fed. Proc. § 66:657 (Dec. 2013) ........................................................................... 18

E. Lisk Wyckoff, 16B West's McKinney's Forms Estates and Surr. Prac. § 12:106
     (March 2013) ........................................................................................................ 11

Gopman and McCawley, 832 T.M., Estate Tax Payments and Liabilities § F(2)(a)
     (BNA 2011) ........................................................................................................ 7, 9

N.Y. E.P.T.L. § 12-1.1, Supp. Prac. Comm. Margaret Valentine Turano (2008) ........................ 11

## PRELIMINARY STATEMENT

Defendants L. Gerod Nadler, Maxine Karas and Lesley Freed, both in their capacities as co-executors of the Estate of Joseph B. Nadler (the "Estate") and in their individual capacities (collectively, the "Executor Defendants"), respectfully submit this memorandum of law in support of their motion: (1) to dismiss Count I of the complaint filed by the United States of America (the "Complaint"), pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6), for failure to state a viable claim; (2) to dismiss Count II of the Complaint, pursuant to Fed. R. Civ. P. 12(b)(1), as being premature in light of the unresolved action for accounting pending in New York State Surrogate's Court for Nassau County (the "Surrogate's Court"); (3) to dismiss the Complaint, pursuant to Fed. R. Civ. P. 12(b)(1), on the grounds of abstention; and (4) in the alternative, to transfer and consolidate this action with a similar action currently pending in the Surrogate's Court.

## INTRODUCTION

More than 13 years after the death of Joseph B. Nadler, the United States of America ("Plaintiff") brings this action against Mr. Nadler's three children (the Executor Defendants) in an effort to recover certain tax liabilities allegedly owed by the Estate to the federal government.  To this end, Plaintiff asserts claims pursuant to 31 U.S.C. § 3713 (Count I) and N.Y. E.P.T.L. § 12-1.1 (Count II) in an effort to impose personally liability against the Executor Defendants in their capacities as co-executors of the Estate and as Estate beneficiaries, respectively, for payment of the Estate's purported tax debt.

Importantly – yet nowhere mentioned in the Complaint – Plaintiff is seeking the *exact same remedy* from the Estate and the Executor Defendants in an action currently pending in the Surrogate's Court.  The pending Surrogate's Court action, commenced in May 2012 (and thus, 18 months before the case at bar) seeks both a compulsory accounting from the Estate and payment of

the Estate's outstanding tax liabilities (the "Pending Surrogate's Court Action").  Although the action is progressing, a final accounting has not yet been rendered.

Apparently not satisfied with the manner in which the Surrogate's Court is proceeding, and in a blatant attempt at forum shopping, Plaintiff filed the instant Complaint.  For the following reasons, Plaintiff's attempt to "two-track" its claims must fail.

*First*, Count I must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a cognizable cause of action.  This claim, which seeks to impose liability against the Executor Defendants pursuant to 31 U.S.C. § 3713, the "Federal Priority Statute", requires an estate be deemed insolvent before the federal government is entitled to "priority" of its claims against the estate.  The Complaint in this case is devoid of allegations respecting when, if ever, the Estate became insolvent.  Without this fundamental element, Plaintiff cannot allege a right to "priority" of its claim and, most significantly, cannot impose liability against the Executor Defendants for distributions purportedly made in derogation thereof.  *See* Point I(A), *infra*.

*Second,* Count II must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) as wholly premature because it arises under a statute which contemplates *post*-accounting proceedings – i.e., claims brought *after* a final accounting has been rendered.  Because Plaintiff commenced the case at bar notwithstanding the fact that a final accounting has yet to be rendered in the Pending Surrogate's Court Action, it put the proverbial cart before the horse and its claim is therefore unripe as a matter of law.  *See* Point II, *infra*.

*Third,* in light of the Pending Surrogate's Court Action, the Complaint should be dismissed *in toto* pursuant to Fed. R. Civ. P. 12(b)(1) on the basis of the "*Colorado River*" abstention doctrine.  Set forth in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), this doctrine promotes the exercise of abstention or a stay of proceedings by

federal courts in cases where the interests of conserving judicial resources and providing for the comprehensive disposition of claims would best be served.  *See* Point III, *infra*.

*Fourth*, in the event the Court does not dismiss the Complaint for the foregoing reasons, it should transfer this action to the Surrogate's Court for consolidation with the Pending Surrogate's Court Action.  Plaintiff should not be permitted to pursue the *same* relief from the *same* parties at the *same* time in two different forums.  *See* Point IV, *infra*.

For these reasons and those discussed below, it is respectfully submitted that the Complaint should be dismissed in its entirety or, in the alternative, transferred or removed to the Surrogate's Court for consolidation with the Pending Surrogate's Court Action.

<u>**Summary of Relevant Facts**</u>[1]

<u>**Background**</u>

Joseph B. Nadler died on November 10, 2000.  Weinstein Decl., Ex. A (Complaint), ¶ 5. His three children, L.G. Nadler, Maxine Karas and Lesly Freed, were named co-executors of their father's estate.  *Id*. ¶ 6.  On or about December 1, 2003, the Executor Defendants filed a tax return on behalf of the Estate, reporting a net estate tax liability in the amount of $1,439,875 as well as a prior payment of estate taxes in the amount of $850,000.  *Id*., ¶ 8.

On or about December 1, 2003, federal estate taxes were assessed against the Estate in the amount of $1,439,875.  *Id*. ¶ 9.  Despite additional tax payments made to Plaintiff by the Executor Defendants in amounts surpassing $2.1 million, it is alleged that a federal tax liability remains in the amount of $567,888.95, reflecting $105,495.21 in actual taxes due and

---

[1] The facts as set forth in the Complaint are taken as true for purposes of this motion only.  A copy of the Complaint is attached to the accompanying Declaration of Andrew J. Weinstein, dated February 21, 2014 ("Weinstein Decl."), as "Exhibit A".

$462,393.74 in penalties and interest.  *Id.* ¶ 10.  According to the Complaint, proper notice of the tax liability was made.  *Id.* ¶ 9.

It is further alleged that on some unspecified date, the Executor Defendants distributed the Estate property to themselves and others.  *Id.* ¶ 12.

**The Pending Surrogate's Court Action**

Although nowhere mentioned in the Complaint, on May 1, 2012, Plaintiff filed a petition with the Surrogate's Court seeking a compulsory accounting pursuant to New York Surrogate's Court Procedure Act § 2205.  *See* United States' Petition for a Compulsory Accounting and Related Relief dated May 1, 2012 (the "Petition") (attached as "Exhibit B" to the Weinstein Decl.).[2]  In addition to seeking a final accounting, Plaintiff requested an order directing the Executors to pay the Estate's federal tax liability. *Id.*, ¶ 5.

The Estate answered the Petition (*see* Answer of Fiduciary to Petition for Compulsory Accounting dated August 22, 2012 (attached as "Exhibit C" to the Weinstein Decl.), ¶ 9), and over the last 18 months, Plaintiff and the Estate have engaged in discovery and litigation regarding the propriety of an accounting and whether any tax liability actually remains.

During the course of discovery (and prior to its completion), the Surrogate's Court *sua sponte* granted the Petition for an accounting (the "Decision").  *See* Decision of the Surrogate's Court dated June 14, 2013 (attached as "Exhibit D" to the Weinstein Decl.).  Because the parties were still engaged in discovery and Plaintiff had not yet complied with various necessary discovery demands made upon it, counsel for the Estate in the Pending Surrogate's Court Action requested that the Surrogate's Court withdraw the Decision as premature.  *See* Letter from Ezra

---

[2] "[I]t is well-settled that, in considering a motion to dismiss, courts may take judicial notice of documents attached to, integral to, or referred to in the complaint, as well as documents filed in other courts and other public records."  *Macer v. Bertucci's Corp.*, No. 13–CV–2994, 2013 WL 6235607, *1 n.1 (E.D.N.Y. Dec. 3, 2013).

4

Huber, Esq. to Daniel Zimmerman, Esq. dated June 19, 2013 ("Huber Letter") (attached as "Exhibit E" to the Weinstein Decl.). In opposition to the Huber Letter, Plaintiff asserted that if the Estate had been completely distributed to the Executor Defendants (as it expects the accounting will demonstrate), then it would request that the Surrogate Court impose individual liability against the Executor Defendants pursuant to N.Y. E.P.T.L. § 12-1.1. *See* Letter from Bartholomew Cirenza, Esq. to Daniel Zimmerman, Esq. dated June 28, 2013 ("Cirenza Letter") (attached as "Exhibit F" to the Weinstein Decl.), at p. 1.

Because the request for withdrawal of the Surrogate's Court's Decision remains *sub judice* and discovery amongst the parties is not yet complete, a final accounting has yet to be filed in the Pending Surrogate's Court Action. In consequence, the Surrogate's Court has not yet judicially settled the Estate, nor has it ordered the Estate or the Executor Defendants to satisfy any purported tax liabilities.

Despite the pendency of the matter before the Surrogate's Court, Plaintiff commenced this action against the Executor Defendants in November 2013. As noted above, Plaintiff seeks the same relief in this action as is sought from the Surrogate's Court – payment of the supposed outstanding tax liabilities. *Compare* Weinstein Decl., Ex. A (Complaint), ¶¶ 13, 18, *with id.*, Ex. B (Petition), ¶ 5.

## STANDARD OF REVIEW

The standard of review for a motion to dismiss is well known: a complaint should be dismissed "if the allegations, taken as true, show the plaintiff is not entitled to relief." *Jones v. Bock*, 549 U.S. 199, 215 (2007); Fed. R. Civ. P. 12(b)(6). "Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss." *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (internal

citation omitted); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (holding

that plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face").

"While legal conclusions can provide the complaint's framework, they must be supported by

factual allegations" in order to avoid dismissal. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

A motion to dismiss a complaint pursuant to the abstention doctrine is considered "a

motion made pursuant to Rule 12(b)(1)." *City of New York v. Milhem Attea & Bros, Inc.*, 550 F.

Supp. 2d 332, 341-42 (E.D.N.Y. 2008). Although the abstention doctrine generally is an

exception to the "unflagging obligation of the federal courts to exercise the jurisdiction given

them," dismissal is proper where, as here, it is in the interest of "[w]ise judicial administration

giving regard to conservation of judicial resources and comprehensive disposition of litigation."

*Colorado River*, 424 U.S. at 817 (quotation marks and citation omitted).

## ARGUMENT

## I.      COUNT I FAILS TO STATE A VIABLE CLAIM PURSUANT TO
##         31 U.S.C. § 3713.

Count I seeks to hold the Executor Defendants personally liable for the Estate's purported

tax liabilities pursuant to 31 U.S.C. § 3713 – the Federal Priority Statute. Weinstein Decl., Ex. A

(Complaint), ¶ 13. Section 3713 provides, in relevant part:

> (a)(1) A claim of the United States government shall be paid first when –
>
>> (A) a person indebted to the Government is insolvent and -
>>
>>> (i) the debtor without enough property to pay all debts
>>> makes a voluntary assignment of property;
>>>
>>> (ii) property of the debtor, if absent, is attached; or
>>>
>>> (iii) an act of bankruptcy is committed; or
>>
>> (B) the estate of a deceased debtor, in the custody of the
>> executor or administrator, is not enough to pay all debts of the
>> debtor.

6

…

> (b) A representative of . . . an estate . . . paying any part of a debt
> of the person or estate before paying a claim of the Government is
> liable to the extent of the payment for unpaid claims of the
> Government.

This claim, alleged against the Executor Defendants in their capacities as executors of the Estate, purportedly arises from the distribution of Estate property "in derogation of the priority of the claim of the United States."  Weinstein Decl., Ex. A (Complaint), ¶ 12.

As set forth in the statute, the United States has a right to priority of its claim against an estate if the estate is insolvent or has insufficient assets to pay its debts.  *See* 31 U.S.C. § 3713(a)(1)(B).  In order to impose personal liability on an executor pursuant to 31 U.S.C. § 3713(b), however, additional allegations must be stated.

Specifically, it must be alleged that: "(i) the executor distribute[d] assets of the estate, (2) the estate is insolvent, and (3) the executor had notice of the debt owed to the Government before the distribution."  *United States v. Dickerson,* 189 F. Supp. 2d 622, 624 (W.D. Tex. 2001); *United States v. Blumenfeld*, 128 B.R. 918, 928 (E.D. Pa. 1991) (same); Gopman and McCawley, 832 T.M., Estate Tax Payments and Liabilities § F(2)(a) (BNA 2011) (same).  For purposes of section 3713, an entity is "insolvent" within the meaning of the statute if its liabilities exceed its assets.  *United States v. Renda*, 709 F.3d 472, 479 n.6 (5th Cir. 2013).

If a person indebted to the United States is not insolvent, the United States does not have priority in regard to payment of indebtedness.  *See United States v. State of Vt.*, 377 U.S. 351, 357-58 (1964) (federal government did not receive priority over antecedent Vermont state tax lien where Vermont taxpayer was not insolvent); *United States v. Fabricated Air Products Co.*, 206 F.Supp. 228, 231 (D.C.Tex. 1962) (evidence adduced by the plaintiff was insufficient to show defendant had more liabilities than assets at the time in question and was insolvent within

the meaning of the priority statute).  Thus, the timing of an estate's insolvency or inability to pay its debts is fundamental to determining whether priority of a claim exists and, in turn, whether personal liability may be imposed upon estate representatives for distributions purportedly made in derogation of that priority.  If distributions were made at a time an estate is solvent and a right to priority arises thereafter, estate representatives cannot be held personally liable for distributions made prior to insolvency.  *See United States v. Lutz,* 295 F.2d 736, 743 (5th Cir. 1961) (finding that under former § 191 of title, government priority could not arise until corporation became insolvent; corporate officer could not be held liable for payments in disregard of government priority "which itself did not arise until after the payments were made"); *Schwartz v. Commissioner of Internal Revenue,* 560 F.2d 311, 319 (8th Cir. 1977) (executors not personally liable with respect to payments made before estate became insolvent; stating "'[p]ayments made prior to insolvency (and thus before the time the United States is entitled to priority of payment) afford no basis for fiduciary liability'") (quoting Ferguson, The Fiduciary's Personal Liability for Federal Taxes of the Decedent and His Estate; The Problems of Distribution and Partial Distribution, 25 N.Y.U. Inst. on Fed. Tax. 1185, 1197 (1967)).

Here, the Complaint wholly fails to allege if and when the Estate became insolvent (a word nowhere found in the Complaint) and further, whether the Estate was insolvent at the time the Executor Defendants made the purported distributions.  *See generally* Weinstein Decl., Ex. A (Complaint), ¶¶ 8-12.  Absent such critical allegations, Plaintiff cannot state a cognizable claim for priority and lacks any basis to hold the Executor Defendants personally liable as estate representatives pursuant to 31 U.S.C. 3713(b).

While Plaintiff does assert "upon information and belief" that the Executor Defendants "liquidat[e]d" the Estate by distributing property before paying Plaintiff's claims, it is not alleged

when these distributions took place, that these distributions were made while the Estate was insolvent, or that the particular distributions rendered the Estate insolvent. *See id.*, ¶ 12. Similarly, while Plaintiff alleges (in regard to Count II only) that "[u]pon information belief there is [currently] insufficient property remaining in the Estate" to satisfy its tax obligations, there are no attendant facts from which the Court might glean the timing of the alleged insufficiency. *See id.* at ¶ 15.

Lastly, there is no telling from the Complaint whether the distributions alleged were subject to a purported claim of priority by Plaintiff as opposed to exempt distributions, such as payments for attorney's fees, executor's commissions, funeral expenses, administrative costs and/or family allowances. *See* Gopman and McCawley, 832 T.M., Estate Tax Payments and Liabilities at § F(2)(a); *Schwartz,* 560 F.2d at 315 n.7 (widow and family allowances are not "debts" within the meaning of the Federal Priority Statute so as to trigger personal liability on estate representatives for such payments). Absent these allegations, it is impossible to know whether the distributions purportedly made by the Executor Defendants were in fact "in derogation" of Plaintiff's claim until the Surrogate's Court settles the Estate and approves or disapproves any of the various applicable exempt distributions.

Given these deficiencies, the Complaint fails to allege a claim for personal liability pursuant to 31 U.S.C. § 3713(b) and Count I must be dismissed.

## II. COUNT II IS PREMATURE AND MUST BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(B)(1).

Like Count I, Count II also seeks to impose personal liability on the Executor Defendants for tax liabilities purportedly owed by the Estate. Count II, however, is alleged pursuant to N.Y. E.P.T.L § 12-1.1, which provides, in relevant part, that estate beneficiaries may be held liable for the estate's debts if "there is insufficient property of the estate available . . . in the hands of the

9

personal representative" to satisfy the debt at issue.  N.Y. E.P.T.L § 12-1.1(b)(1).  Thus, in an

effort to "claw back" certain property distributed to the Executor Defendants in their capacities

as Estate beneficiaries, Plaintiff asserts that there is "insufficient property" remaining in the

Estate to satisfy its tax obligations.  *See* Weinstein Decl., Ex. A (Complaint) at p.1 and ¶¶ 15, 17-

18.

       Regardless of whether Plaintiff seeks to recover against the Executor Defendants in their

capacities as executors or beneficiaries of the Estate, the question of whether there is

"insufficient property" (or any property) remaining is entirely premature in the absence of a final

accounting and judicial settlement of the Estate.  Counts II must therefore dismissed as unripe.

       As discussed above, the Surrogate's Court issued a decision directing an accounting.

Weinstein Decl., Ex. D (Decision).  The Huber Letter's request that the court withdraw its

decision as premature is currently *sub judice* and the parties are in the throes of litigating if, in

fact, the Estate's tax liabilities have already been satisfied as well as whether the distributions

from the Estate were distributed upon a good faith belief that no further taxation was

forthcoming.  *Id.*, Ex. C (Answer), ¶ 9.  As such, no final accounting has yet been rendered or

settled by the Surrogate's Court.  Without a final accounting, it remains too early to know what

exact property remains in the Estate or in the hands of the Executor Defendants in their

capacities as estate representatives.  It also remains to be seen what, if any, tax obligations are

valid and outstanding.

       Not surprisingly, claims against beneficiaries for the debts of an estate are contemplated

as post-accounting proceedings brought *after* a creditor has proven that the estate representatives

are without property sufficient to satisfy the creditor's claims.[3]  *See* N.Y. E.P.T.L § 12-1.1 (b)(1)

---

[3] Although the personal representatives and beneficiaries are one and the same, the method and manner for
imposing liability is not.  N.Y. E.P.T.L § 12-1.1 does not permit Plaintiff to recover from the Executor Defendants

("No liability may be imposed upon such distributees . . . unless plaintiff establishes satisfactorily to the court that he cannot fully satisfy his claim: (1) Because there is insufficient property . . . in the hands of the personal representative"); N.Y. E.P.T.L. § 12-1.1, Supp. Prac. Comm. Margaret Valentine Turano (2008) (Section 12-1.1 "contemplates a post-accounting proceeding, after the executor has distributed the estate"); *see also* E. Lisk Wyckoff, 16B West's McKinney's Forms Estates and Surr. Prac. § 12:106 (March 2013) (actions pursuant to N.Y. E.P.T.L. § 12.1.1 require action providing that creditor's claim cannot be satisfied by estate representative and impliedly relates to estates "already distributed and accounted for").  Neither of these precedents has occurred at this time.  Count II should therefore be dismissed as unripe. *See Texas v. United States*, 523 U.S. 296, 300 (1998) ("[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all'") (*quoting Thomas v. Union Carbide Agricultural Products Co*., 473 U.S. 568, 581 (1985)).

## III.   THE COURT SHOULD ABSTAIN FROM EXERCISING JURISDICTION OVER THIS ACTION PURSUANT TO THE *COLORADO RIVER* ABSTENTION DOCTRINE.

Dismissal of the Complaint is also warranted pursuant to the abstention doctrine set forth in *Colorado River*, which "rest[s] on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation."  424 U.S. at 817 (internal quotation marks and citation omitted).

To justify abstention, the Court must first determine "if the concurrent state and federal proceedings are parallel.  Cases are considered 'parallel' when the main issue in the case is the subject of already pending litigation."  *United States v. Blake*, 942 F. Supp. 2d 285, 293 (E.D.N.Y. 2013) (dismissing federal action to collect estate taxes where New York state court

---

in their roles as beneficiaries without first attempting to satisfy its purported debt from the Estate and estate representatives in the first instance.

action to quiet title on properties subject to tax liens was already pending) (quotation marks and citation omitted). Further, for abstention purposes, proceedings are considered concurrent or parallel "when the two proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same." *Id*. at 297 (quotation marks and citation omitted). "However, of importance, '[p]erfect symmetry of parties and issues is not required. Rather, parallelism is achieved where there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case.'" *Id*. (quoting *In re Comverse Tech., Inc*., No. 06 Civ. 1849, 2006 WL 3193709, at *2 (E.D.N.Y. Nov. 2, 2006)).

Once determined that the cases are parallel, the Court must consider six factors that bear on whether abstention is appropriate. *Id*. at 297. Weighing heavily in favor of abstention in this case, the factors are:

> (1) whether the controversy involves a *res* over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights.

*Pabco Const. Corp. v. Allegheny Millwork PBT,* No. 12 Civ. 7713, 2013 WL 1499402, *2 (S.D.N.Y. Apr. 10, 2013); *see also Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 16 (1983); *Colorado River,* 424 U.S. at 818.

## A. The Pending Surrogate's Court Action and the Case at Bar are Parallel.

The threshold issue of parallelism is squarely met by the facts presented here. As noted above, there is an identity of parties between the Pending Surrogate's Court Action and the case at bar. Further, the issues presented in each action as well as the relief sought are equivalent.

Specifically, by way of this action, Plaintiff seeks to hold the Executor Defendants liable for the debts of the Estate in their capacities as either executors or beneficiaries of the Estate. Weinstein Decl., Ex. A (Complaint), ¶¶ 13, 17-18. While the Pending Surrogate's Court Action is postured as an accounting action, Plaintiff's end goal is the same. As noted above, Plaintiff has requested that the Surrogate's Court issue "[a]n order directing the Executors to pay the Estate's federal tax liability," (*id*. at Ex. B (Petition) at p. 2), and has informed that court that it will seek to hold the Executor Defendants liable as Estate beneficiaries for any tax debts owed by the Estate post-accounting. *See* Weinstein Decl., Ex. F (Cirenza Letter) at p. 1.

Moreover, because the Pending Surrogate's Court Action will determine any issues regarding the Estate's alleged tax obligations (or lack thereof) and, in turn, the Surrogate's Court may order the Executor Defendants to satisfy such debts, resolution of the Action will effectively dispose of all claims presented here. *See* Weinstein Decl. Ex. C (Petition) at p. 2; *id*., Ex. F (Cirenza Letter) at p. 1. On this basis, the case at bar and Pending Surrogate's Court Action are sufficiently parallel for purposes of abstention. *See Blake*, 942 F. Supp. 2d at 297 (although cases lacked perfect identity of parties, federal and state actions were deemed parallel where both required resolution of whether a tax assessment was enforceable and time-barred; thus, state litigation would "undoubtedly resolve the Plaintiff's claims in [federal] action"); *Pabco Const.*, 2013 WL 1499402, at *2 (although actions were "certainly not carbon copies of each other" where one sought a declaratory judgment involving two construction projects and the other sought money damages related to a single project, "absolute congruency" was unnecessary to find *Colorado River* parallelism where, as here, "*substantially* the same parties are contemporaneously litigating *substantially* the same issue in another forum") (internal quotation marks and citation omitted; emphasis in original).

13

**B.  The Six Factors Weigh in Favor of Abstention.**

Because the Pending Surrogate's Court Action is parallel to the case before the Court, it is appropriate for the Court to consider the six abstention factors cited above.  While "no single factor is necessarily decisive", but require a "careful balancing", it is clear that these factors weigh heavily in favor of abstention.  *Bull & Bear Group, Inc. v. Fuller*, 786 F. Supp. 388, 392 (S.D.N.Y. 1992) (internal quotation marks and citation omitted).

The first factor, jurisdiction over res, weighs in favor of abstention.  Both actions seek the payment of the purported outstanding tax debt and, in the case of the Pending Surrogate's Court Action, the filing of an accounting by the Executor Defendants.  As the forum in which administration of the Estate is currently pending, the Surrogate's Court has jurisdiction over any and all property of the Estate.  *See generally* Surr. Ct. Prac. Act § 201.

The second factor, convenience of the forum, is of neutral weight given that both this Court and the Surrogate's Court are of equal convenience to L. Gerod Nadler, a New York resident, and of equal inconvenience to his sisters, both out-of-state residents.  *See Pabco Const.*, 2013 WL 1499402, at *3 (noting that where convenience of the courts "appear to be in equipoise", "this factor is neutral").

Comparatively, the third and "most important factor"– the avoidance of piecemeal litigation – significantly favors abstention.  *See Moses H. Cone*, 460 U.S. at 16.  As discussed, Plaintiff brought suit in two forums against the *same* parties seeking substantially the *same* relief.  Because the action for accounting remains pending, any decision in the case at bar may result in inconsistent and contradictory results in the Pending Surrogate's Court Action.

In addition, given the fact that the action for accounting was commenced 18 months before the matter *sub judice*, it is conceivable that the Surrogate's Court may reach a

14

determination regarding the absence of any additional taxes owed by the Estate before briefing is even completed in this Court.  For these reasons, abstention is preferred.  *See Pabco Const.*, 2013 WL 1499402, at *3 (where "the 'linchpin' of this action is essentially the same issue at the core of the state action, there is a strong likelihood of needless duplication of the state proceeding should both actions move forward simultaneously") (internal quotation marks and citation omitted); *Bull & Bear*, 786 F. Supp. at 392-93 (avoidance of piecemeal litigation by abstention was "strongly implicated" where defendant-counterclaimant "raised the same issues" in each action; a risk of inconsistent results was posed; and the measure of damages at issue in the federal action were "inextricably linked" to claims pending in state case).

       "The fourth factor, the order in which the actions were filed, does not rest on a race to the courthouse.  Instead, this factor is considered in a common-sense manner by examining how much progress has been made in each forum."  *First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.*, 862 F. Supp. 2d 170, 192-93 (E.D.N.Y. 2012) (dismissing federal action for breach of contract filed five years after state action; noting that plaintiff selected the state forum before filing federal action) (internal quotation marks and citation omitted).

       Here, Plaintiff filed the Pending Surrogate's Court Action in May 2012 and as a result, that action has a significant "head start".  As noted above, the Surrogate's Court issued the Decision which prematurely granted Plaintiff's petition for an accounting while the parties were already engaged in the discovery process.  Weinstein Decl., Ex. D (Decision).  Moreover, currently pending before the Surrogate's Court is the Executor Defendants' request that the Decision be withdrawn.  *Id.*, Ex. E (Huber Letter).  Because nothing other than the present motion has been filed in the case at bar, abstention is favored for this reason as well.  *See, e.g., Blake*, 942 F. Supp. 2d at 299 (abstention favored where state action was filed two years before

15

federal action, the parties engaged in discovery, and the state court's default judgment order was on appeal); *Pabco Const.*, 2013 WL 1499402, at *4 (where an answer and motions were filed in a year-old state action, but "the instant motion [was] the only substantive activity" before the federal court, fourth factor "weigh[ed] strongly in favor of a stay or abstention").

The fifth factor, concerning the rule of decision, cuts both ways given that Plaintiff seeks relief from the Executor Defendants under both federal and state law.  *See* Weinstein Decl., Ex. A (Complaint) at p. 1.  Of note, however, is the fact that Plaintiff also seeks this same relief in the Pending Surrogate's Court Action and, in fact, could have simply asserted its Federal Priority Claim in state court in the first instance.  *See* Point IV, *infra*; *United States v. Knott,* 298 U.S. 544, 552 (1936) ("No rule of law precludes [the United States] from asserting its priority by an appropriate proceeding in any [state] jurisdiction in which property of the insolvent is being administered").  Thus, while federal law may provide the basis for this Court's jurisdiction over the instant action and with regard to Court I, Plaintiff could have (and did) seek the same relief in the Surrogate's Court.

The final and sixth factor, addressing the state court's ability to adequately protect Plaintiff's rights, also favors abstention.  As discussed at length in Point IV *infra*, the Surrogate's Court is empowered to hear and resolve any claim relating to estates and the affairs of decedents, including those brought pursuant to the Federal Priority Statute.  Surr. Ct. Prac. Act § 201.  In addition, because an accounting is necessary to determine what (if any) debts are due Plaintiff before liability may be imposed against the Executor Defendants in their capacities as beneficiaries (*see* Point II, supra), disposition of Plaintiff's claims in the Surrogate's Court will provide the most comprehensive relief.  *See Bull & Bear*, 786 F. Supp. at 394 (abstaining so "all of the claims between the parties will be heard in one forum, reducing the risk of inconsistent

results and allowing for a comprehensive resolution . . . before a court that is familiar with these parties and that is particularly well situated to resolve the open issue of New York law.").

Because the foregoing factors tip heavily in favor of abstention, it is respectively submitted that this Court should exercise its discretion and dismiss this action pursuant to the *Colorado River* doctrine.

## IV.   THIS ACTION SHOULD BE DISMISSED OR, IN THE ALTERNATIVE, TRANSFERRED OR REMOVED TO THE SURROGATE'S COURT FOR CONSOLIDATION WITH THE PENDING SURROGATE'S COURT ACTION.

For the reasons set forth in Points I-III, the Complaint should be dismissed in its entirety. Should the Court find otherwise, it is requested that this action be transferred or removed to the Surrogate's Court for consolidation with the Pending Surrogate's Court Action.  Although this Court certainly has the power and authority to hear Plaintiff's claims, it is most prudent for the Court to transfer the action for the following reasons.

*First*, it is indisputable that the Surrogate's Court is empowered to hear claims of the type asserted by Plaintiff in this action.  Indeed, as a court granted "full and complete general jurisdiction in law and in equity to administer justice in all matters relating to estates and the affairs of decedents . . . ."  (Surr. Ct. Prac. Act § 201), the Surrogate's Court is authorized to determine any issues pertaining to the property and funds of the Estate and to provide Plaintiff with the complete relief it seeks.  *See Mayer v. Goldhaber,* 63 Misc.2d 605, 313 N.Y.S.2d 87 (Sup. Ct. N.Y. Co. 1969) ("it is the recognized policy of the judicial system . . . that litigation involving the property and funds of a decedent estate should be disposed of in the Surrogate's Court where the Surrogate's Court has jurisdiction to afford complete relief"); *Estate of King Faisal II*, 35 Misc.2d 412, 413, 230 N.Y.S.2d 799, 800 (Surr. Ct. N.Y. Co. 1962) (same; accepting transfer of action from United States District Court for the Southern District for consolidation with accounting action).

17

Thus, while Plaintiff chose to proceed against the Executor Defendants via piecemeal litigation, it could have simply brought both of its claims before the Surrogate's Court in the first place alongside the request for compulsory accounting. *See Knott,* 298 U.S. at 552; 29 Fed. Proc. § 66:657 (Dec. 2013) ("Priority of claims of the United States under 31 U.S.C.A. § 3713 may be asserted in any state jurisdiction in which property of the insolvent is being administered"); *see also Estate of Bailey,* 147 Misc.2d 46, 554 N.Y.S.2d 791 (Surr. Ct. Bronx Co. 1990) (addressing creditor's claims brought against estate executor and beneficiary); *In re Chusid,* 60 Misc. 2d 462, 301 N.Y.S.2d 766, (Kings Co. Sur. Ct. 1969) (finding that children of beneficiary had standing to bring claim in Surrogate's Court for portion of trust principal; jurisdiction of the Surrogate's Court (pursuant to Surr. Ct. Prac. Act § 201) was expanded to avoid "the futility of compelling litigants to resort to another court of general jurisdiction about matters which may more economically and more expeditiously be disposed of in a Pending matter in the Surrogate's Court"). Given the volume and variety of cases heard by the Surrogate's Court in the normal course of practice, it is indisputable that the court is particularly well-equipped to address and resolve Plaintiff's creditor claims alongside its claim for a compulsory accounting. *See, e.g*., *In re Schmuckler's Estate,* 58 Misc.2d 418, 296 N.Y.S.2d 202 (N.Y. Sur. Ct. 1968) (addressing claim brought against beneficiary by federal government in accounting proceeding for payment of estate taxes).

*Second*, it is a well-settled that courts prefer "concentration in the Surrogate's Court of all matters affecting the administration of an estate." *In re De Fontarce's Estate*, 66 N.Y.S.2d 808 (Surr. Ct. N.Y. Co. 1946); *see also Matter of Guardianship of Bowers,* 164 Misc.2d 298, 301, 624 N.Y.S.2d 750, 752 (N.Y. Sur. Ct. 1995) ("it is well established that judicial fragmentation does not serve either litigants or the court system and that matters affecting the affairs of

18

decedents' estates should be concentrated in the Surrogate's court").  As a result of this preference, state and federal courts with jurisdiction to hear claims pertaining to an estate frequently transfer or remove such actions to the Surrogate's Court for resolution.  *See, e.g., King Faisal II*, 35 Misc.2d at 413, 230 N.Y.S.2d at 800; *De Fontarce's Estate,* 66 N.Y.S.2d at 808 (Surrogate's Court consented to transfer of action from federal court where issues in the action were required to be determined before the affairs of the estate could be settled); *see also Marci v. Swiers,* 29 Misc.3d 212, 223-24, 905 N.Y.S.2d 871, 879-80 (Sup. Ct. Saratoga Co. 2010) (transferring action from New York State Supreme Court where similar action was pending before the Surrogate's Court in light of the "preference that matters involving a decedent's estate be resolved in Surrogate's Court"); N.Y. C.P.L.R. § 325(e) (providing method for removing action pending in New York State Supreme Court to Surrogate's Court).  Moreover, as discussed above in Point III, *supra*, concentration of all of Plaintiff's claims with those in the Pending Surrogate's Court Action will not only save judicial resources and personal expenses, but will also avoid the risk of inconsistent findings and decisions.

     *Third*, because the Pending Surrogate's Court Action was filed more than a year before the instant case, all claims affecting the Estate "should be disposed of in the forum where judicial action was first sought and obtained" by Plaintiff.  *See Bloomingdale v. Bloomingdale,* 258 A.D. 231, 16 N.Y.S.2d 359 (1st Dep't 1939).  To find otherwise would sanction Plaintiff's blatant forum shopping.

     Lastly, it bears repeating that both this action and the Pending Surrogate's Court Action involve the *exact same* parties, arise from the *exact same* nucleus of relevant facts, and seek the *exact same relief* – payment of the Estate's purported tax liabilities.  For these reasons alone, common sense dictates consolidation of the two actions.  *King Faisal II*, 35 Misc.2d at 413, 230

N.Y.S.2d at 800 (transfer of federal action where it sought "to recover the same property which the administrator is accounting for in [the surrogate's] court"); *Marci,* 29 Misc.3d at 223-24, 905 N.Y.S.2d at 879-80 (transfer to Surrogate's Court appropriate where "[t]he parties and attorneys are the same in both these actions" and the same relief was sought in both actions); *Norton v. Marine Midland Trust Co. of Southern New York,* 72 A.D.2d 633, 634, 421 N.Y.S.2d 148, 149 (3d Dep't 1979) (affirming transfer of action alleging fraud by executor and trustee from New York State Supreme Court to Surrogate's Court where petition for final accounting was pending; same parties were involved in both proceedings and the outcome of the Supreme Court action would affect estate administration).

While Plaintiff may see no harm in pursuing the same relief in two different proceedings, it is inherently unfair to the Executor Defendants who must bear the expense and inconvenience of litigating two separate actions in two different forums.  Accordingly, absent dismissal, this action should be transferred or removed to the Surrogate's Court for consolidation with the Pending Surrogate's Court Action.

## CONCLUSION

For the foregoing reasons, it is respectfully submitted that the Executor Defendants'

motion to dismiss the Complaint or, in the alternative, to transfer or remove this action to the

New York State Surrogate's Court for Nassau County for consolidation with the pending

accounting action should be granted in its entirety.

Dated: New York, New York
        February 21, 2014

                      THE WEINSTEIN LAW FIRM PLLC

By:  Andrew J. Weinstein (AW7395)
       Barrie A. Dnistrian (BD0233)
       800 Third Avenue, 18th Floor
       New York, NY 10012
       Tel: (212) 582-8900
       aweinstein@twlf.com

       LAW OFFICE OF WILLIAM D. WEXLER
       William D. Wexler (WW9495)
       816 Deer Park Avenue
       North Babylon, NY 11703
       Tel: (631) 422-2900
       wexlaw@optonline.net

       *Attorneys for Defendants L. Gerod Nadler, Maxine*
       *Karas and Lesly Freed*